**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **SAMUDRAGUPTA SANYAL** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **OFFICER JEREMY CREECH,** | § | **CAUSE NO. _____** |
| **IN HIS INDIVIDUAL CAPACITY,** | § | |
| **GALVESTON COUNTY SHERIFF'S** | § | |
| **OFFICE, AND GALVESTON** | § | |
| **COUNTY** | § | |
| *Defendants.* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

## I.    <u>INTRODUCTION</u>

TO ALL PARTIES AND THE HONORABLE JUDGE PRESIDING:

<u>1.</u>    COMES NOW,  Plaintiff, **SAMUDRAGUPTA SANYAL** (hereinafter "*Sanyal*"), Individually, and files this *Original Complaint* (hereinafter "*complaint*" or "*petition*" interchangeably) complaining of and against Defendants, **JEREMY CREECH** (hereinafter referred to as "*Creech*"), in his individual capacity, **GALVESTON COUNTY SHERIFF'S OFFICE**, an entity (hereinafter referred to as "*Sheriff's Office*"), and **GALVESTON COUNTY**, an entity (hereinafter referred to as "*County*"; collectively the "*Defendants*") and premised on the following pleadings, sets forth these causes of action and would respectfully show unto the Court and jury as follows:

## II.    <u>JURISDICTION</u>

<u>2.</u>    Plaintiff brings this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by Defendants, at all times herein acting under color of state law,

of rights secured to Plaintiff under the Constitution of the United States, including the Fourth, Eighth, and Fourteenth Amendments.

<u>3.</u>    Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1343(a)(3) and (a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. Section 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331 because claims for relief derive from the Constitution of the United States and the laws of the United States. Further, this Court has jurisdiction over all Defendants because they have committed a tort and/or facilitated the commission of a tort by its policies, inactions, or acquiescence in Texas and have had continuous contacts with Texas.

<u>4.</u>    This Court, moreover, has jurisdiction over claims against the Sheriff's Office and County because the Defendants are not immune from liability or suit. Defendants are "*governmental units*" as defined by Tex. Civ. Prac. & Rem. Code 101.001(3), *et seq*. However, governmental immunity has been waived in this instance by the Texas legislature under the Tort Claims Act because Plaintiff's injuries were caused by the negligent use of tangible personal property (*i.e.* a taser) against Plaintiff.

<u>5.</u>    For the negligent use of personal property, the Sheriff's Office and County are liable to Plaintiff as if those entities were private persons. Tex. Civ. Prac. & Rem. Code § 101.021(a)(2). The Sheriff's Office and County are also a "*person*" within the meaning of 42 U.S.C. § 1983 and subject to civil liability pursuant to the doctrine outlined in *Monell v. Dept. of Social Services* (1978) 436 U.S. 658 and *Robinson v. Midland Cty.*, 80 F.4th 704, 707 (5th Cir. 2023) (a plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the

objectionable conduct is the expected, accepted practice of city employees. **That knowledge, coupled with a failure to act, can show the existence of a municipal policy**.) which shall be expounded hereinbelow.

### III.    <u>VENUE</u>

<u>6.</u>    Venue is properly established in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. Section 1391, in that the events and circumstances herein alleged occurred in the City of Galveston, County of Galveston, Texas, and all of the Defendants were either employed in or are residents of the City of Galveston, Galveston County in the State of Texas where jurisdiction is bestowed unto United States District Court for the Southern District of Texas located in Galveston, Texas.

<u>7.</u>    In addition, venue for this action is mandatory in Galveston County, Texas, pursuant to Tex. Civ. Prac. & Rem. Code § 15.015, which provides that a suit brought against a county shall be brought in that county, and the Sheriff's Office and Galveston County is the county wherein all causes of action arose. This Court, moreover, has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

### IV.    <u>PARTIES</u>

<u>8.</u>    At all pertinent times, Plaintiff, Sanyal, resided    and was a resident of Galveston County, Texas.

<u>9.</u>    Defendant, County, is a governmental unit of the State of Texas. At all times herein Galveston County, which oversees the Galveston County Sheriff's Office (hereinafter "GCSO") as well as the Galveston County's Commissioners Court and the precincts of

*Plaintiff's Original Complaint*

Galveston County. Pursuant to Tex. Civ. Prac. & Rem Code §§ 17.024(a), 101.001 *et seq*., Defendants, Sheriff's Office and County, may be served with process by serving a copy of the citation or by mailing a copy of the citation and petition by registered or certified mail, return receipt requested, to the Galveston County Commissioners Court, 722 Moody Avenue, Galveston, TX 77550 and Galveston County's Attorney Office at 1300 McGowen St., Suite 120, Harris County, TX 77004. Alternatively, the Sheriff's Office may be served with process at 601 54th Street, Galveston, Tx 77551.

10.    At all times relevant to the facts and circumstances in the complaint, Officer Creech was an individual residing in Galveston County, Texas and is a deputy, agent, and/ or employee of the Sheriff's Office and County of Galveston and whose acts, as alleged herein, were performed solely in his individual capacity and/or under color of state law who battered and arrested Plaintiff without probable cause and inflicted excessive force on Plaintiff without justification causing severe injuries to Plaintiff. Officer Creech may be served by delivering to Defendant a copy of the citation and petition in person, or by mailing same to Defendant by registered or certified mail, return receipt requested at Defendant's place of employment, Galveston County Sheriff's Office, 601 54th Street, Galveston, Tx 77551.

11.    In addition, the Defendant officer's conduct, actions, and/or inactions directly caused, proximately caused, and/or was a substantial factor in causing the injuries to Plaintiff.

12.    In engaging in the conduct described herein, Defendant officer acted in his individual capacities and/or under color of law while engaging in the conduct described

herein. In engaging in the conduct set forth, Defendant officer exceeded the authority vested in him as an officer under the United States Constitution.

13.    Plaintiff is informed and believes, and on such basis alleges, that each of the named Defendants was and is the agent, employee, principal, employer and/or co-conspirator of each of the remaining Defendants and/or vice versa. In addition, Plaintiff is informed and believes, and on such basis alleges, that the Defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named Defendants conspired with, and/or sided and/or abetted and/or endorsed and facilitated and/or jointly collaborated with each of the remaining Defendants and identified persons in committing the acts herein alleged in their individual capacities, as set forth herein and expounded.

## V.    FACTUAL BACKGROUND

14.    On or about May 21, 2023 at approximately 4:01 A.M., Creech flagged down and pulled over Plaintiff on the basis that his vehicle was approaching a road block at allegedly high speeds. This, however, is both untrue and inconsistent upon reviewing the officer's bodycam footage wherein Plaintiff came to a slow and gradual stop to speak with Creech, questioning the reason for the road blockage. Plaintiff denies ever traveling at high speeds on the roadway. Creech immediately requested Plaintiff's driver's license and identification information without any reason or basis. Plaintiff complied with this request without protest, however, he continued to inquire as to the road blockage and that he was in transit to his domicile.

15.    Plaintiff's vocation is in the medical field and, as a result,    his schedule will often cause him to work at odd hours or in the early mornings. Plaintiff also moonlighted as an

occasional driver as a rideshare service for Uber and Lyft, which would similarly cause him to work at odd hours.

16.    Upon providing Plaintiff's identification, Plaintiff continued to inquire as to the current situation and the following exchange ensued:

>Plaintiff:             "*What's going on, why is the road blocked?*"
>
>Officer Creech:    "*You see lights and police cars and you think you are going to drive through it?*"
>
>Plaintiff:             "*I'm going normal speeds but what's going on?*"
>
>Officer Creech:    "*Normal speeds?! There's a car in the lane of traffic.*"
>
>Plaintiff:             "*I know, why is there a car in the lane of traffic?*"
>
>Officer Creech:    "*Is that your concern?!*"
>
>Plaintiff:             "*Absolutely! It's obviously on the opposite* [indiscernible]"

17.    To which upon this exchange Creech demonstrates a sudden, capricious, irate behavior and threatened Plaintiff by stating "[Sic] ***Are you ready to go to jail?***" Until said point, the only topic of discussion was Plaintiff's alleged speed prior to stopping for the officer and the Plaintiff's inquiries as to the road block.

18.    Upon this heated exchange, of which Plaintiff maintained his composure at all times, Defendant Creech continued to accuse Plaintiff of speeding (despite not having any evidence or indications of recording or clocking Plaintiff's speed prior to his stop) and to which Plaintiff defends his position that he was in compliance with the regulatory speeds of said roadway. Creech, without hesitation, orders Plaintiff out of the vehicle.

19.    Officer Creech immediately and without hesitation requests Plaintiff to exit his vehicle – Plaintiff in clear shock of the situation unfolding – and within seven (7) seconds elapsing (per the video footage on file) draws his taser and points it at Plaintiff in a

threatening manner. Plaintiff continues to inform Creech as to his actions and complies with the officer by exiting the vehicle, taser drawn and pointed on him throughout this ordeal.

20.    Upon exiting the vehicle, Officer Creech, accompanied by a deputy officer, places Plaintiff front first on an adjacent vehicle and without warning, hesitation, or just cause proceeds to tase Plaintiff. The shock of the taser and Plaintiff's pain is clearly recorded on the bodycam footage. Immediately after the tasing, the body camera footage was disconnecting, possibly due to intentional action by the officer. During the time of the bodycam blackout, Plaintiff was beaten on the pavement, with the officer wrenching the Plaintiff's shoulders backwards and placing his entire body weight on the Plaintiff and smashing his face into the gravel, causing several injuries. Plaintiff was never provided a reason for his arrest, never read his Miranda rights, and was immediately detained, tased, and arrested without neither just nor probable cause.

21.    In a subsequent video, at approximately 7:55 minutes in, for the first time Plaintiff is able to discern and understand the basis for his arrest. Officer Creech notifies a separate officer in the Sheriff's Office that Plaintiff is "*the Uber driver that tried to run us over.*" This statement is a clear falsehood in light of the previous video observed wherein Officer Creech flagged down Plaintiff; Plaintiff came to a gradual stop; discourse ensued; and Plaintiff was tased and arrested as a result. Officer Creech intentionally and knowingly lied under false pretense to legitimize and validate Plaintiff's arrest and use of force.

22.    Copies of the video and bodycam footage can be viewed and accessed by all parties and the Court at the following URL link:

https://www.dropbox.com/scl/fo/9oh2z8s5gtyw20zzbxneu/AKmyemZ-OFfnXOCG9H3G58Q?rlkey=wy3efm6oztm568v8ebva2jxzm&st=ezoz0c6x&dl=0

23.     In general, a court addressing a motion under Rule 12(b)(6) "*must limit itself to the contents of the pleadings, including attachments thereto*." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). But when a pleading references documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). "*A document is central to a claim when it is 'necessary to establish an element' of the claim*." *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 U.S. Dist. LEXIS 189656, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)). Additionally, the Court may take judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

24.     Moreover, Fed. R. Civ. P. 10(c) states that "[a] *statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes*." *Muttathottil v. Mansfield*, 381 F. App'x 454, 457 (5th Cir. 2010)

25.    As a result of the Defendant officer's gross miscarriage of justice and abuse of

power, Plaintiff has sustained both physical and emotional injury and damages as a result:



*Plaintiff's Original Complaint*

26.     This suit follows pursuant to violations of Plaintiff's inalienable, constitutional rights.

## VI.     CAUSES OF ACTION

### [AS TO DEFENDANT, OFFICER CREECH, INDIVIDUALLY]

**VI. – A.     42 U.S.C. SECTION 1983; UNLAWFUL SEARCH OF PLAINTIFF'S PERSON IN VIOLATION OF HIS FOURTH AMENDMENT**

27.     Plaintiff hereby re-allege and incorporates by reference herein ¶¶ 14 through 26 hereinabove. In doing the acts complained of herein, Defendant, Creech, in his individual capacity, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, namely that of an unlawful search of his person in violation of his Fourth (4th) Amendment right.

28.     Specifically, probable cause will exist for a warrantless search and arrest if, at the moment of arrest, facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient in themselves to warrant a person of reasonable caution to believe a particular person committed an offense.

29.     A warrantless arrest will be authorized if a person is found in a suspicious place and under circumstances that reasonably show that such person has been guilty of some crime.

30.     Factors to consider in a determination of whether consent to search was voluntary include: (i) whether Miranda warnings were given; (ii) the temporal proximity of the arrest and search; (iii) the presence of intervening circumstances; and (iv) the purpose and flagrancy of the official misconduct. Additional factors to consider in measuring the attenuation are whether the individual was made fully aware that he could decline to

.

consent and whether the police purpose underlying the illegal arrest was to obtain the consent. *Fowler v. State*, No. 01-93-00573-CR, 1995 Tex. App. LEXIS 3069, at *1 (Tex. App. Dec. 7, 1995).

31.     In the current occurrence, Defendant, Creech, was located at the roadside within what can be assumed was a roadblock that the officer was assisting with. Thereafter, the dispute occurred which led     to a verbal exchange – more so heated on the part of Creech and worrisome on the part of Plaintiff – and the ultimate tasing and arrest of the Plaintiff. At no time was Plaintiff held to suspicion by the officer, no arrest or search warrant was issued against him, and, at all times, Plaintiff remained compliant with the officer save for the disagreement as to the reason for his detainment and being ordered to exit the vehicle. This subject of the arrest was neither for possession of a weapon, contraband, or any other illegal conduct or item which would warrant a search in conjunction with the arrest. During the incident which has made the basis of this suit, Plaintiff, at all times, remained cooperative and peaceable during the officer's search and verbally protested his arrest. At no point in time did Plaintiff consent to being searched by the constables nor did probable cause exist.

32.     As matters escalated baselessly, the crux of the issue being that of Plaintiff's alleged speed and his inquisition as to the roadblock, Defendant then intentionally and unlawfully chose to tase Plaintiff as Officer Creech ordered him out of the vehicle and placed him against an adjacent vehicle, and in the process of doing so, inflicted excessive force against him to a degree which caused him to suffer both physical and psychological trauma as a consequence of this exchange. The instigation stemming from Plaintiff asking why there

was a roadblock and being ordered to exit the vehicle thereafter ultimately lead to being assaulted and battered by the officer when no such threat warranted the actions taken.

33.    During this unlawful arrest, no probable cause existed that Plaintiff was guilty of any crimes, in possession of contraband, or that there was any immediate, potential or proximate threats which would place the safety of the officers, any surrounding bystanders, or the Plaintiff himself at any degree of cognizable risk.

34.    The Fourth (4th) Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. Under the "*automobile exception*," in cases where there was probable cause to search a vehicle, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained. *Maryland v. Dyson*, 527 U.S. 465, 466-67, 119 S. Ct. 2013, 2014, 144 L. Ed. 2d 442 (1999) (per curiam) (emphasis in original) (quoting *United States v. Ross*, 456 U.S. 798, 809, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)).

35.    A warrantless search is permissible under the automobile exception if (i) the officer conducting the search had 'probable cause to believe that the vehicle in question contain[ed] property that the government may properly seize'; and (ii) exigent circumstances justified the search." *United States v. Berry*, 664 F. App'x 413, 420 (5th Cir. 2016) (per curiam) (quoting *United States v. Castelo*, 415 F.3d 407, 412 (5th Cir. 2005) (alteration in original) (quoting *United States v. Reyes*, 792 F.2d 536, 538 (5th Cir. 1986))).

36.    When searching a vehicle without a warrant, "*a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.*" *United States v. Ross*, 456 U.S. 798, 809, 102 S. Ct. 2157, 72 L. Ed. 2d

572 (1982). "*An individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband.*" *Id.* at 823. "*If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.*" *Id.* at 825.

37.    Probable cause is defined as "*whether at that moment the arrest was made, the officers had . . . facts and circumstances within their knowledge and of which they had reasonably trustworthy information that was sufficient to warrant a prudent man in believing that [Defendant] had committed or was committing an offense.*" *Charles v. Smith*, 894 F.2d 718, 723 (5th Cir. 1990) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)). The existence of probable cause is determined by reviewing the totality of the circumstances. *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

38.    In addition, while the individual discretion of an experienced police officer can be a valid factor in determining the reasonableness of a search, as to the individual's person, this discretion is not unfettered, and no search can be justified on the basis of mere "*inarticulate hunches*". *Terry v. Ohio*, 392 U.S. 1, 23, 88 S. Ct. 1868, 1881 (1968). Moreover, the searching officer conducting a *Terry* "*stop-and-frisk*" need not establish probable cause, but he still must be able "*to point to specific and articulable facts which, taken together with rational inferences [drawn] from those facts [would] reasonably warrant [the] intrusion.*" *Id.* 392 U.S. at 21. In the current occurrence, there was no basis to demonstrate reasonableness given the totality of the circumstances. The entire exchange

was cordial and calm without any type of probable cause or suspicion arising until such time that the officer proceeded to order the Plaintiff out of his vehicle due to his obvious frustration that Creech then chose to release on the Plaintiff by acts of violence.

39.    Due to such temper rising by the officer, unjustly, such prompted the Creech's arbitrary decision to quickly tase, subdue, and arrest the Plaintiff under false pretenses which, the origination of, stemmed from his dissatisfaction with the Plaintiff's inquisitive nature as to the roadblock happened upon. Plaintiff was in no way presented as a danger such a degree of risk to the officer which would have warranted further action to subdue the Plaintiff by way of taser and physical restraint thereafter. **Plaintiff was already in the process of exiting the vehicle and complying with the officer's request and no verbal or physical action by Plaintiff indicated, to any reasonable or suspectable degree, that Plaintiff intended, or could have intended, to use force, flee or pose a danger to the officer**.

40.    Although an exception to the probable cause requirement exists allowing Defendant constables to protect themselves by conducting a pat down of a suspect, the "*narrow scope*" of this exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked.

41.    In order to qualify as a person aggrieved by an unlawful search and seizure one must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search and seizure directed at someone else. *Henzel v. United States*, 296 F.2d 650, 652 (5th Cir. 1961).

42.    In the current suit, Defendant officer unlawfully arrested Plaintiff without probable cause, exigent circumstances, or a valid arrest warrant. This disagreement exchanged between Officer Creech and Plaintiff ultimately lead to the Plaintiff being tased by Creech for no reason and proceeded to be detained, searched, and arrested on allegations of hindering apprehension and resisting arrest even though the Defendant officer was the direct and proximate cause for Plaintiff's physical and mental injuries; the electrical shock of the taser in question being the point and nexus of physical injuries sustained and to which the officer was, or should have been, aware of the consequences when using such excessive degree of force.

43.    Ultimately, the criminal charges were subsequently dismissed after the body video was reviewed by the District Attorney's office.

**VI. – B.      42 U.S.C. SECTION 1983; EXCESSIVE FORCE**

44.    Plaintiff hereby re-alleges and incorporates by reference herein ¶¶ 14 – 43 hereinabove.

45.    In doing the acts complained of herein, Defendants Creech, in his individual capacity, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, namely that of inflicting excess force unto Plaintiff in violation of his constitutional rights under the Fourth (4th) and Fourteenth (14th) Amendment.

46.    To state a claim for excessive force under the Fourth (4th) Amendment, a Plaintiff must "*first allege facts capable of showing that they suffered a seizure.*" *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (internal citation omitted). Plaintiff must further plead three pertinent elements: (i) an injury, (ii) resulting directly and only from the

use of force that was excessive to the need, and (iii) the use of force was objectively unreasonable. *Bush*, 513 F.3d at 501.

47.    In the current occurrence, Plaintiff has suffered significant physical and psychological injury while being seized by Defendant Officer. While there is no bright line rule regarding extent of injury, courts have held that it must be more than *de minimis*. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (asserting that the injury must simply be more than *de minimis* "*evaluated in the context in which the force was deployed*."). The unlawful conduct exhibited by Creech by unjustifiably tasing, physically restraining, and abetting in the tasing and physical restraining and arrest of Plaintiff, during a routine stop which was neither within the course of an official investigation nor involving any type of violent or nonviolent    crime is, by definition, excessive.

48.    As a result of this unconstitutional conduct exhibited by Creech, Plaintiff suffered severe physical injuries as a result of the officer restraining Plaintiff and shooting electrical currents throughout his body. Plaintiff's injuries exceed the *de minimis* standard required and, thus, he has sufficiently stated a claim for a cognizable injury herein.

49.    Moreover, Plaintiff's injuries are a direct and proximate result from the force Officer Creech caused by tasing him and throwing him against an adjacent vehicle, restraining him by his back after being tased, and arresting him despite Plaintiff complying throughout the course of the altercation and, pursuant to the video attached herewith; Plaintiff never resisted arrest. It has been clearly established by the Fifth Circuit that even the use of relatively minor force, such as *'pushing, kneeing, and slapping'* is excessive when deployed against "*a suspect **who is neither fleeing nor resisting arrest**.*" *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) (collecting cases). In the current occurrence,

*Plaintiff's Original Complaint*

although the parties in question were arguing verbally, Plaintiff never physically resisted nor fled from the Officer as he was being arrested.

50.    The electrical shock that was caused by the Plaintiff being tased was to such an extent that Plaintiff's suffered clear physical injuries and bleeding as a result. Such force is unwarranted in a situation wherein Plaintiff neither resisted arrest and the purpose of the officer's interaction with Plaintiff, initially, was pertaining to the roadblock. It is a far stretch of the mind to assume that Plaintiff was posing as an immediate threat to the safety of the officer or others, which he was not, and Plaintiff was never actively resisting arrest or attempting to evade arrest at any point in time during the altercation in question.

51.    Plaintiff can and has met the required causal nexus between Defendant Creech's excessive force in tasing and restraining the Plaintiff – which was excessive given the totality of the circumstances – and Plaintiff has incurred cognizable injuries as a result.

52.    Plaintiff further pleads that Defendant Creech's use of force was unreasonable under the circumstances presented. Courts may consider three factors in determining whether a particular use of force was reasonable or excessive to the need: (i) the severity of the crime, (ii) whether the suspect posed an immediate threat to civilians or law enforcement, and (iii) whether the suspect was actively resisting or evading arrest by attempting to flee the scene. *Graham*, 490 U.S. at 396 (1989); *Khansari v. City of Houston*, 14 F.Supp.3d 842, 853 (S.D. Tex. 2014).

53.    Premised on the foregoing elements: (i) Plaintiff was never the target of a suspected crime nor posed as any type of threat to the constables and, further, the basis for the arrest arose over a verbal altercation alone; (ii) Plaintiff demonstrated and showed, from both the circumstances, his behavior, and his person, that he was never an immediate threat to

civilians or law enforcement and, conversely, he was cooperative, peaceable, and calm despite the disagreement over the roadblock; and (iii) Plaintiff was never resisting arrest, never made an attempt to flee, and at all times was cooperative with law enforcement officers during this verbal interaction.

54.    The only action that Plaintiff took while being arrested was voicing his opinion to the officer as to his inquisition of the roadblock and its purpose. This minor action of Plaintiff voicing his opinion is not commensurate with Defendant Creech's force employed in tasing and restraining the Plaintiff to the degree of causing permanent and irreparable injury to his person and psyche. As a result, Defendant Creech's force was objectively unreasonable under the circumstances and, as a result, the constables violated Plaintiff's Fourth (4th) Amendment rights by using excessive force against him.

55.    Finally, Defendant Creech is not entitled to qualified immunity. To overcome the defense of qualified immunity, a Plaintiff must show that the official violated a constitutional right, and that the constitutional right was clearly established at such time. First, Plaintiff has shown that Defendant Officer's use of force was unreasonable, which is a violation of a constitutional right. Second, that constitutional right was clearly established at the time. Plaintiff has a clearly established right to be free from excessive force when the tasing and arrest occurred as the circumstances and premise for such actions were all but wanting in the circumstance presented. *See Deville*, 567 F.3d at 169 (citing *Tarver v. City of Edna*, 410 F.3d 745, 753-54 (5th Cir. 2005))

56.    Furthermore, it is clearly established that the amount of force Defendant Officer could use depends on the severity of the crime, whether Plaintiff posed a threat, and whether Plaintiff was attempting to resist or flee. Plaintiff was never resisting arrest or

attempting to flee when Defendant Officer handcuffed and tased Plaintiff, causing significant bodily injuries as a result. Such force was both excessive and unreasonable and in light of the totality of the circumstances and Plaintiff's nonviolent, stationary behavior; Plaintiff never resisted or evaded arrest at any point in time throughout the verbal argument and altercation between the officer and himself. As a result, Defendant Creech cannot claim defense under qualified immunity.

57.     The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth (14th) amendment to the United States Constitution; the Plaintiff's guaranteed constitutional civil rights were violated based on the outrageous claims and actions of the Defendants. The outrageous actions and abuse of appointed authority of the Defendant Officer has resulted in physical and psychological trauma due to his injuries as well as mental and emotional pain and suffering caused by the traumatic incident.

58.     These rights under the Fourth (4th) and Fourteenth (14th) amendments were clearly established federal constitutional rights, years before the incident complained of by Plaintiff.

59.     Plaintiff's damages proximately caused by the Defendant Officer include unlawful arrest and imprisonment, physical pain and suffering, mental pain and suffering, loss of wages due to the injuries caused by the Defendant Officer, past and future medical expenses, out-of-pocket expenses caused by the towing and storage of his vehicle, and humiliation.

60.    Plaintiff suffered injury that resulted directly and only from the use of force that was clearly excessive to the needs of the circumstance, and the force used was objectively unreasonable in light of what a reasonably prudent officer would due in like circumstances.

**VI. – C.    MALICIOUS PROSECUTION / FILING OF A FALSE POLICE REPORT  IN VIOLATION OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS AND PURSUANT TO THE FOURTEENTH AMENDMENT**

61.    Plaintiff hereby re-allege and incorporates by reference herein ¶¶ 14 – 60 hereinabove.

62.    In doing the acts complained of herein, Defendant Creech, in his individual capacity, acted under color of law to deprive Plaintiff of certain constitutionally protected rights, namely that of malicious prosecution perpetrated by Defendant Officer in violation of Plaintiff's Fourth (4th) and Fourteenth (14th) Amendment substantive due process rights.

63.    Notwithstanding the foregoing mentioned hereunder, Plaintiff was unlawfully arrested by Defendant Creech in deprivation of Plaintiff's established constitutional rights when no such circumstances, probable cause, or warrant was the basis of such unlawful arrest. Thereafter, two charges were brought against Plaintiff and filed under a police report Booking No 399663, Case Numbers MD-0412190 and MD-0412191        in which the officer alleges that Plaintiff is charged with Resisting Arrest and Driving While Intoxicated . However, the video footage of the officer, coupled with the facts plead hereunder paint a polarized chain of events. At no time was the Plaintiff evading, fleeing, or resisting arrest. Plaintiff became the victim of an unlawful search, seizure, and arrest due to an incidental stop in attempts to, originally, assist the Plaintiff with his vehicle. That, at all pertinent times, Plaintiff was calm, peaceful, and refrained in all actions save for inquisitions as to

the roadblock in question and until such point in which the Officer became irate and subsequently assaulted, detained, and arrested the Plaintiff against his established constitutional rights.

64. Thereafter, the Officer knowingly, intentionally, and willingly filed a false police report that was subsequently picked up by the district attorney's office in Galveston County and, to date, the District Attorney's Office has subsequently dismissed the charges on all counts.

65. A police officer may be liable under a Fourth (4th) Amendment malicious prosecution claim, pursuant to 42 U.S.C. § 1983, for filing false charges or **providing false information** to the prosecuting attorney when the officer is sufficiently involved with the prosecution that he may be said to have initiated the prosecution. *Limon v. U.S.*, 579 F.3d 79 (1st Cir. 2009) (proof did not establish that FBI agents initiated state prosecution, but Plaintiff prevailed on claim of intentional infliction of emotional distress); *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004); Reed v. City of Chicago, 77 F.3d 1049 (7th Cir. 1996); *Eubanks v. Gerwen*, 40 F.3d 1157 (11 Cir. 1994); Dellums v. Powell, 660 F.2d 802 (D.C. Cir. 1981); *Hampton v. Hanrahan*, 600 F.2d 600, 630 (7th Cir. 1979), cert. granted in part, judgment rev's in part on other grounds, 446 U.S. 754, 100 S. Ct. 1987, 64 L. ed. 2d 670 (1980).

66. Further, it has been held that where an officer withholds exculpatory evidence from the prosecutor during the course of criminal proceedings, the continuation of the criminal case establishes malicious prosecution against that officer. *Sanders v. English*, 90 F.2d 1152 (5th Cir. 1992) (rejected on other grounds by *Shneider v. Simonini*, 33, 749 A.2d 336 (2000); Goodwin v. Metts, 885 F.2d 157 (4th Cir. 1989).

.

67.    As in false arrest and detention cases, police officers may argue that the decision of a prosecuting attorney, judge or grand jury to file or approve charges should insulate them from liability for malicious prosecution. However, in *Wheeler v. Cosden Oil and Chemical Co.*, 744 F.2d 1131 (5th Cir. 1984) (see *Hand v. Gary*, 838 F.2d 1420 (5th Cir. 1988)), the Court there held that the "*break in the causal chain*" argument is applicable only to false arrest and imprisonment cases and would not bar an action for malicious prosecution. In addition, it has been held that the intervening action by a prosecuting attorney or a court only creates a rebuttable presumption that an independent judgment as to probable cause has been made, and that the Plaintiff may demonstrate that the police officer's deliberate misrepresentation of certain facts caused the charges to be filed. *Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010); *Fletcher v. Burkhalter*, 605 F.3d 1091 (10th Cir. 2010) (officers who conceal or misrepresent facts are not insulated from malicious prosecution claim by actions of prosecutor and court); *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)

68.    Here, Plaintiff has shown by a preponderance of the evidence, both through the video footage submitted, the comparable false police report and case number provided, and the pleadings themselves that Plaintiff, at no point in time resisted arrest or attempted to hinder apprehension. Once the evidence is reviewed it can be shown and found that the opposite transpired; that Plaintiff, at all pertinent times, was calm in his physical demeanor, notwithstanding the verbal altercation, and that he never posed as a threat to the Officer during the exchange of words and arguments that ensued up to the point in time where he was tased and arrested; the only action Plaintiff took was that of inquiring as to the roadblock; verbal communications in no way constitutes as resisting arrest – even the

farthest stretch of the imagination would fall short to make such a preposterous correlation between the two.

## VII.    CAUSES OF ACTION
### [AS TO THE SHERIFF'S OFFICE AND COUNTY]

### VII. – A.    SHERIFF AND COUNTY'S LIABILITY PURSUANT TO THE TEXAS TORT CLAIMS ACT; SUPPLEMENTAL JURISDICTION

69. Plaintiff hereby re-alleges and incorporates by reference herein ¶¶ 14 – 68 hereinabove.

70.    Federal jurisdiction exists over an entire suit, including state law claims, when the federal and state law claims derive from a **common nucleus of operative fact** and the Plaintiff would be expected to try them both in one judicial proceeding. *Quick v. VistaCare, Inc.*, 864 F. Supp. 2d 492, 498 (N.D. Tex. 2012) (Fish, J.) (citations omitted).

71.    The *Gibbs* standard has been replaced by the Judiciary and Judicial Procedure Act, 28 U.S.C.A. § 1367 (1990); see *Raygor v. Regents of the Univ. of Minnesota*, 534 U.S. 533, 533, 122 S. Ct. 999, 152 L. Ed. 2d 27 (2002). In determining whether to exercise or decline supplemental jurisdiction over state law claims, a court may consider both the factors listed in 28 U.S.C. § 1367(c), and common-law factors of "*judicial economy, convenience, fairness and comity*." *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011).

72.    Specifically, 28 USCS §1367 provides:

> *(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.*

73.    In addition, pursuant to Tex. Civ. Prac. & Rem. Code § 101.021 a governmental unit in this state is liable for:

*(1) property damage, personal injury, and death proximately caused by the
wrongful act or omission or the negligence of an employee acting within his scope
of employment if:*

> *(A) the property damage, personal injury, or death arises from the
> operation or use of a motor-driven vehicle or motor-driven equipment; and*

> *(B) the employee would be personally liable to the claimant according to
> Texas law; and*

*(2) personal injury and death so caused by a condition or use of tangible personal
or real property if the governmental unit would, were it a private person, be liable
to the claimant according to Texas law.*

74.    The Sheriff's Office and County have waived all rights to governmental immunity
pursuant to Tex. Civ. Prac. & Rem. Code § 101.025.

75.    In the current occurrence, the Sheriff's Office and County are liable under the *Texas
Tort Claims Act* (hereinafter "TTCA") because Plaintiff's injuries were caused by the
negligent use of tangible personal property (the taser used to subdue Plaintiff) issued by
Galveston County, by and through Galveston County Commissioners Court, and through
its related branches.

76.    Courts define "*taser guns*" as "*conducted energy weapons*" that use propelled wire
to channel energy to a remote target, thereby controlling and overriding the body's central
nervous system. *Draper v. Reynolds*, 369 F.3d 1270, 1273 n.3 (11th Cir. 2004). A taser
gun can fire two probes up to twenty-one (21) feet, which are connected to the hand-held
taser gun via high-voltage, insulated wire. *Id.* When the probes touch the target, the taser
gun transmits electrical pulses along the wires and into the body of the target. *Id.*

77.    For the negligent uses of personal property, by and through the Defendant Officer
in question, the Sheriff's Office and County are liable to Plaintiff premised on the negligent
and unlawful use of the *motor-driven equipment*, *i.e.* the taser in question, that the
officer/employees of the county were duly issued and, to which such caused personal injury

to Plaintiff based on the negligent use of said personal property. Tex. Civ. Prac. & Rem. Code § 101.021(1) and (2).

### VII. – B.     43  U.S.C. SECTION 1983; MONELL RELATED CLAIMS; IDENTIFYING THE POLICIES; INADEQUATE TRAINING;

78. Plaintiff hereby re-alleges and incorporates by reference herein ¶¶ 14 – 77 hereinabove.

79.     Defendant Sheriff's Office and County are "*persons*" within the meaning of 42 U.S.C. § 1983 and subject to civil liability pursuant to the doctrine outlined in *Monell v. Dept. of Social Services* (1978) 436 U.S. 658.

80.     Defendant Sheriff's Office and County, including through its officers and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "*policy*" or "*policies*") which confirm and provide the protections guaranteed under the United States Constitution, including those under the Fourth (4th) and Fourteenth (14th) Amendments, to include without limitation, the protection of the right to be free from unlawful search and seizures and excessive force applied by its police deputy officers.

81.     Specifically, the Sheriff's Office and County are named correctly as both entities are independent yet within the same governmental sub-body.

82.     A municipality can be liable under 42 U.S.C.S. § 1983 for constitutional violations resulting from its failure to properly train police officers if the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been

deliberately indifferent to the need. *Walsweer v. Harris County*, 796 S.W.2d 269, 270 (Tex. App. 1990).

83.    In addition, the Texas Commission on Law Enforcement, as organized under the Texas Administrative Code, Title 7, Part 37, Chapter 215, sets forth training requirements as well as commissions and law enforcement associations to engage in their own contracts with academic providers in the pursuit of providing training and accreditation to their officers. By way of example, 37 Tex. Admin. Code § 215.1 states that the commission may enter into a contract with: (1) a law enforcement academy training provider; (2) a law enforcement association, distance education, or proprietary training provider; or (3) an academic alternative training provider; to enter into a contract with the commission, a training provider must be approved after completing all requirements for application and eligibility; and a training provider applicant must use the electronic application process and submit any required fee.

84.    Moreover, a plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. **That knowledge, coupled with a failure to act, can show the existence of a municipal policy**. *Robinson v. Midland Cty.*, 80 F.4th 704, 707 (5th Cir. 2023).

85.    Pursuant to *Robinson v. Midland*, Sheriff's Office and County were aware of Officer Creech's conduct and continued to permit him to exercise his authority and duty under color of law as an officer of the county and state. By way of example, Officer Creech has been involved in litigation in the past as it pertains to his conduct as an officer for the

Sheriff's Office and County (*see* Cause No. 18-CV-0865-A, 122nd Judicial District Court, Galveston County, Texas). Moreover, the Sheriff's Office and County have been aware of the abuse of discretion that is being perpetrated by its employee officers and have chosen to remain inactive and complicit for so long that such knowledge and failure to act is, *ipso facto*, the existence of a policy.

86.     At no pertinent time did Plaintiff conduct himself in a manner which proved to be dangerous to the officers or to himself; exigent circumstances were not present; and Plaintiff was neither fleeing apprehension or arrest nor actively resisting the officers in question. Even more so, even if Defendants were to argue that Plaintiff was noncompliant and/or verbally aggressive, no policy or case law would permit the use of CEDs for passive resistance, even though Plaintiff sets forth that he was not resisting in any way shape or form.

87.     The Sheriff's Office has a history of failing to train, failing to supervise, and failing to discipline deputies in a manner that would prevent them from using excessive force in the manner they did against Plaintiff.

88.     In effect, the Sheriff's Office has cultivated or failed to prevent an organizational culture of employing excessive force such that its deputies understand the Sheriff's Office and County will ratify even their worst excesses and pursue unjust criminal charges against their victims to attempt to protect themselves from liability.

89.     Despite the Sheriff's Office unlawful arrest and the County filing charges against the Plaintiff, such charges have since been dismissed at the time of this complaint's filing.

90.     Officer Creech instigated, and the Sheriff's Office and County pursued, a false criminal case against the victim/Plaintiff for resisting an officer, amongst other charges, and the Plaintiff ultimately was discharged of all charges filed by dismissal.

91.     The training policies of the Sheriff's Office and County were inadequate to train its deputies to handle the usual and recurring situations with which they must deal. This includes training policies that were inadequate with respect to alternatives to excessive or deadly force, sympathetic gunfire, tasering, de-escalation tactics, communicating with suspects, issuing warnings, giving clear commands, and the use of deadly force.

92.     The Sheriff's Office and County were deliberately indifferent to the obvious consequences of its failure to train deputies adequately.

93.     The failure of the Sheriff's Office and County to provide adequate training caused the deprivation of Plaintiff's rights, that is, the failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

94.     In addition, Defendants Sheriff's Office and County failed to adequately train the Defendant Officer to make use of any alternative de-escalating tactics prior to the use of the unauthorized CED force as well as the Officer's post-taser actions demonstrate unlawful use of restraining tactics against Plaintiff.

95.     Defendants Sheriff's Office and County had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of its agents, deputy officers, employees and those acting under them, including within its department so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

96.    As a result of the aforesaid, Defendant Officer has violated Plaintiff's Fourth (4th) amendment rights and objectively used unreasonable force against Plaintiff when handcuffing Plaintiff and subsequently tasing Plaintiff causing a heart attack. The Officer's acts were in noncompliance with Sheriff's Office and County's policies and training, including its procedures, practices, and customs relating to (i) arrests without probable cause, (ii) violating the constitutional rights of its residents by seizing them without probable cause, and (iii) applying excessive force by way of unauthorized CED use and restraint tactics by its constables.

97.    Additionally, Defendants Sheriff's Office and County turned a blind eye to these constitutional deprivations by providing its deputy officers with much too broad discretion and latitude in determining what amount of force to use and whether to subject citizens to searches in violation of their constitutional rights and it is and was foreseeable that these deficient actual policies, procedures, practices and customs would result in incidents like the one giving rise to this lawsuit.

98.    The deficient policies, procedures, practices and customs set out above are caused by and amount to the conscious disregard of and deliberate indifference to the rights of Plaintiff to be free from unreasonable seizures and excessive force.

99.    Finally, Defendants Sheriff's Office and County's deficient policies, procedures, practices and customs relating to the use of unlawful seizure and excessive force are a producing and proximate cause of Plaintiff's damages. This also incorporates the implementation, training, and continued legal education pertaining to these trainings as to all duly licensed officers within the county's jurisdiction.

100.    Defendant Sheriff's Office and County retained Defendant Officer, where Galveston County through its Sheriff's Office had actual, or at least constructive, knowledge of their propensity for the abuse of citizens and police misconduct, including the use of unlawful seizure and excessive force.

101.    Defendant Sheriff's Office and County breached their duty to provide Defendant Officer with adequate supervision and training premised on the aforesaid herein. The grossly inadequate supervision resulted from and was caused by Defendant Sheriff's Office and County, through its Officer's deliberate indifference to the rights of Plaintiff, not to be subjected to unlawful search and seizure and excessive force. Finally, the grossly inadequate supervision is a producing and proximate cause of Plaintiff's damages.

102.    Plaintiff is further informed and believes that Sheriff's Office and County, through its officers, never investigates or disciplines the Defendant Officer for continual violations of citizens' constitutional rights. Plaintiff believes that the violation of his rights was not an isolated incident but are regular and occurring and are daily occurrences.

103.    Galveston County and the Sheriff's Office are also liable for inadequate training of its police for the failure of the Defendants to properly train or supervise its deputy officers when "*in light of all the duties assigned to specific deputy constables or employees the need for more or different training is obvious, and the inadequacy so likely will result in the violation of individuals' constitutional rights. Thus, the policymakers of the County can be said to have been deliberately indifferent to the need*". See *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-90 (1989).

.

104.    Based on information and belief, the Sheriff's Office and County, through the decisions of its policymaker, in a direct and/or indirect capacity, encouraged the aforementioned misconduct, which proximately caused the damages to the Plaintiff.

105.    Premised on the totality of the circumstances, there was no imminent threat, exigent circumstance, nor probable cause which would warrant Defendant Officer's use of the taser against Plaintiff simply over a verbal altercation that ensued after his vehicle came to a stop and the inquiry that ensued. The matter is further heightened given the fact that the Officer knew, or should have reasonably known, that the use of an electrical weapon would cause the electrical shocks to heighten the degree of damage and injury inflicted on Plaintiff.

106.    In a Fifth Circuit decision, the case of *Ramirez v. Guadarrama*, 3 F.4th 129, 131-32 (5th Cir. 2021), there the case dealt with the tragic death of *Gabriel Eduardo Olivas*. While responding to a 911 call reporting that Olivas was threatening to kill himself and burn down his family's house, Officers Guadarrama and Jefferson discharged their tasers at Olivas, striking him in the chest. Olivas had doused himself in gasoline, which ignited when the prongs of Guadarrama's taser came into contact with it. Olivas was engulfed in flames. The house burned down. Olivas died of his injuries several days later.

107.    Ultimately, the Fifth Circuit opined that district court erred in finding disputed factual issues precluded finding that the officers were entitled to qualified immunity; the officers' conduct was not unreasonable nor was the force used excessive under the circumstances because when the officers arrived at the residence, the decedent was covered in gasoline, and he was threatening to kill himself and burn down the house, which contained six other people; given the horrendous scene that the officers faced, involving

the immediate potential for the destruction of lives and property, the force used—firing

tasers—was not unreasonable or excessive, and thus, the officers did not violate the Fourth

Amendment and were entitled to qualified immunity.

108.    Therefore, the Sheriff's Office and County are liable for the deprivation of

Plaintiff's constitutional rights under M*onell v. Department of Social Services of the City*

*of New York*, 436 U.S. 658 (1978), and its progeny, which hold that municipal entities may

be held liable for violations of Constitutional rights committed by its employees because

its failure to adequately train employees resulted in the deprivation of Plaintiff's

constitutional rights.

**VII. – C.    SHERIFF'S OFFICE AND COUNTY THROUGH ITS CONSTABLE'S CUSTOM, POLICY, AND/OR  PRACTICE OF VIOLATION OF CONSTITUTIONAL RIGHTS**

109.    There has been previous litigation against the        named Officer, the Sheriff's

Office, and the County.

110.    The policymaker responsible for this policy, practice or custom are Galveston

County and the Sheriff's Office through the decisions of its policymaker in a direct and/or

indirect capacity. The Sheriff's Office and County has designated these known subsidiaries

as the collective and joint final authority on all matters of policy, operations, and discipline

with their express approval.

**VII. – D.    SHERIFF'S OFFICE AND COUNTY LIABILITY BY RATIFICATION 42 U.S.C. § 1983**

111.    Plaintiff realleges all prior paragraphs and incorporates the same herein by

reference.

112.    The Sheriff's Office and County ratified, condoned, and encouraged Officer

Creech's unlawful failures to issue warnings, unlawful deployment of a taser, and use of

*Plaintiff's Original Complaint*

excessive force so as to create and encourage an organizational culture that cultivated and encouraged unnecessary violence by Creech and like deputies.

113.    This incident was not the first in which, for example, the Sheriff's Office and County ratified and condoned sympathetic gunfire or tasering.

114.    The Sheriff's Office and County were aware that Creech and like deputies had used unlawful, excessive force in the past, but ratified, condoned, and encouraged their behavior as well as similar behavior by other deputies.

115.    The Sheriff's Office and County ratified, condoned, and encouraged Creech as to the use of unlawful force against Plaintiff.

116.    The Sheriff's Office and County were deliberately indifferent to the obvious consequences of their ratification of excessive force as well as Creech's use of excessive force specifically.

117.    On information and belief, Office Creech has not been reprimanded, subject to retraining, or otherwise faced any professional consequence for his unlawful use of excessive force against Plaintiff because his supervisors have affirmed, ratified, condoned, and encouraged his and like deputies behavior.

259. The Sheriff's Office and County were responsible for Creech's unconstitutional acts against Plaintiff by virtue of their willful ratification and encouragement of the same.

118.    Officer Creech        used excessive force against Plaintiff, in part, because he understood such conduct would not result in professional sanction and was, on the contrary, encouraged. The Sheriff's Office and County's ratification of violence by deputies was so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

.

119.    Because of the aforementioned acts and omissions, Plaintiff suffered damages in an amount to be shown according to proof at trial.

120.    The Sheriff's Office and County are liable for the deprivation of Plaintiff's constitutional rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, which hold that municipal entities may be held liable for violations of Constitutional rights committed by its employees because its policy resulted in the deprivation of Plaintiff's constitutional rights.

121.    The Sheriff's Office and County are liable for compensatory damages.

122.    Plaintiff further seeks attorney's fees and costs under this claim.

## VIII.    PLAINTIFF'S DAMAGES

123.    As a direct and proximate result of Defendants' unlawful, unconstitutional, and wrongful conduct, Plaintiff has and continues to suffer the following injuries and damages:

    a.    Violation and deprivation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution;

    b.    Physical injuries and past, present, and future pain and suffering as a result of the excessive force and injuries dealt to this physical body and mental psychological state;

    c.    Violations and deprivations of the following clearly established and well-settled federal constitutional rights including but are not limited to: (i) freedom from unreasonable search and seizure of their persons under the Fourth (4th) Amendment to the United States Constitution; (ii) right to equal protection under the Fourteenth (14th) Amendment to the United

States Constitution, and (iii) the right not to be subject to malicious prosecution as a result of a false police report; and

d.   The conduct of named Defendant police deputy officer was malicious, wanton and oppressive.  As a result, Plaintiff is therefore entitled to an award of punitive damages against said Defendants notwithstanding actual damages incurred.

## IX.    PRAYER

124.   For the foregoing reasons, Plaintiff prays for judgment against the named Defendants and requests the following relief to be awarded:

a.   For general damages of at least $1,000,000.00;

b.   For special according to proof;

c.   For punitive damages against the named individual Defendants, according to proof;

d.   For reasonable attorney's fees pursuant to 42 U.S.C. Sections 1983 and 1988;

e.   For costs of suit herein incurred; and,

f.   For such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

November 10, 2024

**/s/ Edward A. Rose, Jr.**
By Edward A. Rose, Jr. Attorney at Law
Edward A. Rose, Jr., Attorney at Law, PC
Attorney-in-Charge
SBN: 24081127
3027 Marina Bay Drive Suite 208
League City, Texas 77573
Phone: 713-581-6029

.

*Plaintiff's Original Complaint*

Fax: 832-201-9960
edrose@edroseattorneycpa.com

**/s/ Kent Motamedi**
By: Kent Motamedi, Attorney at Law
Motamedi Law, PLLC
SBN: 24107233
952 Echo Lane, Suite 320
Houston, Texas 77024
Phone: 832-582-5867
kent@motamedilaw.com
***Attorneys for Plaintiff***

.

*Plaintiff's Original Complaint*