Case 3:24-cv-00325   Document 23   Filed on 06/09/25 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
June 09, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:24-cv-325

Samudragupta Sanyal, *Plaintiff*,

v.

Officer Jeremy Creech, *et al.*, *Defendants*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

Before the court are motions to dismiss by Officer Jeremy Creech, the Galveston County Sheriff's Office ("GCSO"), and Galveston County ("the county"). Dkts. 11, 14. The court grants Creech's motion in part and denies it in part, Dkt. 11, and grants GCSO and the county's joint motion, Dkt. 14.

**I.   Background**

Around 4:00 a.m. on May 21, 2023, Creech stopped Samudragupta Sanyal for speeding while approaching a roadblock. Dkt. 1 ¶¶ 14, 16. Sanyal was slow to exit the vehicle despite Creech ordering him to do so several times. Dkt. 12-3 at 0:04:06–0:04:30. As Sanyal finally began to step out of the vehicle, it lurched forward because he forgot to put it in park. *Id.* at

0:04:30–0:04:40. This apparently prompted Creech to forcefully remove Sanyal from the vehicle. *Id.* Once Sanyal was out of the vehicle and placed in a leaning position against it, Creech tased him. *Id.* at 0:04:40–0:04:48; Dkt. 1 ¶ 20. After cuffing and depositing Sanyal in the back of his cruiser, Creech described him as "drunk." Dkt. 12-3 at 0:05:47–0:05:50.

Sanyal consented to a voluntary blood draw at GCSO's substation on Bolivar Peninsula, which confirmed he had a blood alcohol level of 0.103 grams of alcohol/100 milliliters of blood—0.08 above the legal limit. Dkts. 12-5 at 0:01:10–0:06:45; 11-1. The county charged Sanyal with resisting arrest and driving while intoxicated but later dropped both charges for insufficient evidence. Dkts. 1 ¶¶ 43, 63.

Sanyal sued GCSO, the county, and Creech in his individual capacity under 42 U.S.C. § 1983, alleging Fourth and Fourteenth Amendment violations. *Id.* ¶¶ 27–122. The defendants have moved to dismiss Sanyal's complaint under Rule 12(b)(6). Dkts. 11, 14.

## II. Legal Standards

### A. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, the court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

While a court "usually may rely on only the complaint and its proper attachments," the Fifth Circuit considers "[d]ocuments that a defendant attaches to a motion to dismiss . . . part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024) (quotations and citation omitted); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted). The court adopts video recordings included in the pleadings "over the factual allegations . . . if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

**B.     Section 1983**

To state a claim against a government official under § 1983, a plaintiff must allege (1) the defendant violated "a right secured by the Constitution and laws of the United States" and (2) "a person acting under color of state law" committed the violation. *West v. Atkins*, 487 U.S. 42, 48 (1988). Individual-capacity claims under § 1983 are subject to the affirmative defense of qualified immunity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). Once raised, it is the plaintiff's burden to negate the defense by (1) "alleg[ing] a violation of a constitutional right" and (2) showing the right "was 'clearly established' at the time of the alleged violation." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The right is clearly established when the court finds "controlling authority . . . that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (citation omitted). In other words, the court must find a reasonable officer could have believed the defendant's conduct was lawful in the situation he confronted. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

A plaintiff may also sue a municipality under § 1983—commonly called a *Monell* claim. *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th

Cir. 2023). To state a *Monell* claim, a plaintiff must plead facts that plausibly establish "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a constitutional right." *Id.* (citation omitted). "[T]he unconstitutional conduct must be *directly* attributable to the municipality through some sort of official action" or ratification. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (emphasis added).

"[T]o get past the pleading stage, a [*Monell*] complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022) (quotations and citation omitted).

**III. Analysis**

    **A.   Officer Misconduct**

Sanyal alleges Creech violated his Fourth Amendment right to freedom from unreasonable search and seizure, and his Fourth and Fourteenth Amendment rights to freedom from excessive force and malicious prosecution. Dkt. 1 ¶¶ 27, 45, 62. In response, Creech argues he had probable cause to stop and question Sanyal, had reasonable belief that Sanyal's vehicle contained evidence of intoxicated driving, was met with active resistance

from Sanyal justifying the use of force, and did not file a false police report because he had probable cause to arrest Sanyal. Dkt. 11 ¶¶ 13, 16, 18, 24, 31.

To address the merits of these arguments, the court must determine "whether the undisputed facts and disputed facts, accepting [Sanyal's] version of the disputed facts as true, constitute a violation of a constitutional right." *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024) (citation omitted). Creech, however, attached body-cam and dash-cam footage to his motion to dismiss, as well as the toxicology report. Dkts. 12-1–5. Because the events captured by the footage and report are sufficiently referenced in and central to Sanyal's complaint, the court considers the videos and report part of the pleadings in ruling on the motions to dismiss. *See* Dkt. 1 ¶¶ 14–22 (describing the events depicted in the video footage, how the events violated Sanyal's constitutional rights, and providing a URL link to the footage on Dropbox); ¶¶ 61–68 (discussing false police report claim); *Collins*, 224 F.3d at 498–99 (finding incorporation by reference proper where motion-to-dismiss exhibit is central to complaint's allegations); *Hodge*, 90 F.4th at 844 (stressing the pleadings must *sufficiently* refer to the videos before the court may consider them incorporated by reference). Where the videos "blatantly contradict[]" the allegations in the complaint,

the court adopts the former. *Harmon*, 16 F.4th at 1163 (citation omitted). With this in mind, the court now turns to the merits.

### 1. Search Incident to Arrest

Sanyal contends Creech had no probable cause to search his vehicle after his arrest for driving while intoxicated. Dkt. 1 ¶¶ 31, 34–36. "[C]ircumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). The arrest offense here—driving while intoxicated—"suppl[ied] a basis for searching [Sanyal's] passenger compartment . . . and any containers therein," as Creech could expect to find alcohol, drugs, or other offense-related evidence in the vehicle. *See id.* at 344. Creech's search of Sanyal's vehicle was therefore lawful, and the court grants Creech's motion to dismiss on this count.

### 2. Excessive Force

Sanyal next contends Creech inflicted excessive force by tasing him after he was compliant and did not resist arrest. Dkt. 1 ¶¶ 47–54. Creech responds that Sanyal was actively resisting arrest and therefore the use of his taser was necessary. Dkt. 11 ¶ 23–24. He also contends Sanyal's taser injuries were *de minimis*. *Id.* ¶ 27.

To bring an excessive force claim, Sanyal must plead he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Objective unreasonableness requires evaluating "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). When "the severity of crime and immediate safety threat are relatively inconclusive, a suspect's active resistance to arrest may justify this degree of force." *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021).

Sanyal sufficiently pleads he was injured during his encounter with Creech and that his injuries resulted directly from Creech's conduct. *See* Dkt. 1 at 9, (images of scabs, cuts, and bruising), 47 (alleging significant psychological injury), 49 (alleging causation); *Flores*, 381 F.3d at 398 ("[P]sychological injuries may sustain a Fourth Amendment claim.").

Sanyal also sufficiently pleads Creech's use of force was objectively unreasonable. Taking Sanyal's allegations as true and viewing the video evidence, it appears Sanyal posed no threat to justify using a taser on him. *Cloud*, 993 F.3d at 384. The body-cam footage shows that Sanyal was slow

to exit his vehicle, but he did not physically resist Creech removing him from the car or arresting him. Dkt. 12-3 at 0:04:06–0:04:40. Once removed, Sanyal was compliant with Creech's orders, leaned against the car, and allowed himself to be handcuffed. *Id.* at 0:04:40–0:05:33. While in this position—and again, without visibly resisting Creech—Sanyal calmly stated he was going the speed limit. *Id.* In response, Creech tased him without warning. *Id.* at 0:04:40–0:04:48. Because Sanyal sufficiently alleges he had no persistent or "active resistance to arrest [that could] justify this degree of force," the court finds he sufficiently pleads Creech's taser use was excessive and unreasonable. *Cloud*, 993 F.3d at 384; *see also Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (tasing justified when officer is met with "*immediate and persistent*" resistance (emphasis added)). Accordingly, the court rejects Creech's assertion that Sanyal's injuries were *de minimis*. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) ("*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold." (alteration in original) (citation omitted)). The court denies Creech's motion to dismiss on this claim.

### 3. Malicious Prosecution

Sanyal next alleges that because Creech lacked probable cause to arrest him, Creech also violated his Fourth and Fourteenth Amendment rights by

maliciously prosecuting him through filing two false arrest reports—one for resisting arrest and another for driving while intoxicated. Dkt. 1 ¶¶ 63–65.

"If there was probable cause for any of the charges made, then the arrest was supported by probable cause, and the claim for false arrest fails." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (cleaned up) (citation omitted). "Probable cause [for arrest] exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). An officer who arrests with probable cause "is not liable for false arrest [even if] the innocence of the suspect is later proved." *Hall v. Trochessett*, 105 F.4th 335, 341 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1173 (2025) (alterations in original) (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).

Nowhere in his complaint does Sanyal allege that "no reasonable officer could have believed that [Creech] had probable cause for his arrest." *McClain v. Delgado*, 132 F.4th 362, 365 (5th Cir. 2025). Sanyal's complaint instead states in a merely conclusory fashion that Creech lacked probable cause to arrest him. Dkt. 1 ¶ 20. Such conclusory allegations cannot survive a Rule 12(b)(6) motion to dismiss. And given that Creech thought Sanyal was

"drunk" and observed him speeding toward a police car blocking a roadway, the court finds a reasonable officer could have believed Sanyal was driving while intoxicated. Dkts. 12-1 at 0:03:33–0:04:25; 12-3 at 0:05:47–0:05:50. "Probable cause is not a high bar," and where probable cause exists, a malicious-prosecution claim fails. *Espinal v. City of Hous.*, 96 F.4th 741, 745 (5th Cir. 2024) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)); *see Thompson v. Clark*, 596 U.S. 36, 43 (2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution, as this Court has recognized it, is the wrongful initiation of charges without probable cause."). The court therefore grants Creech's motion to dismiss on this claim.

### B. Municipal Liability

Sanyal also brings claims under the Texas Tort Claims Act ("TTCA") and § 1983 against GCSO and the county. Dkt. 1 ¶¶ 69–122. GCSO and the county argue dismissal is proper because (1) GCSO is not a legal entity that can be sued; (2) the county's governmental immunity remains intact; and (3) Sanyal has not sufficiently pled that a county policy, practice, or custom caused his injuries. Dkt. 14 at 6–12.

#### 1. Inability to Sue GCSO

"In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior

corporation (the county, in the case of the sheriff's department) to grant the servient agency with jural authority." *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 826 (S.D. Tex. 2012) (quotations and citation omitted); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (plaintiff may sue city department only if it "enjoy[s] a separate legal existence." (citation omitted)). The court has previously held "[GCSO] does not appear to qualify as an entity with capacity under the rules because it cannot sue or be sued." *Lacey v. Galveston Cnty. Jail Med. Dep't*, No. CIV.A. 3-06-0408, 2008 WL 624595, at *3 (S.D. Tex. Mar. 5, 2008).

Just like in *Lacey*, Sanyal does not "show that the [county] ever granted its [sheriff's] department the capacity to engage in separate litigation." *Darby*, 939 F.2d at 314. Because Sanyal "seeks recovery from a legal entity that does not exist for his purposes," the motion to dismiss is granted as to GCSO. *Id.*

### 2. Texas Tort Claims Act

Sanyal alleges the county is liable under the TTCA because his injuries "were caused by the negligent use of tangible personal property (the taser used to subdue Plaintiff) issued by Galveston County." Dkt. 1 ¶ 75. The county responds that its "governmental immunity has not been waived under the [TTCA]" because Sanyal alleges only "intentional" officer misconduct and

"Texas counties are immune from claims of intentional torts by its agents." Dkt. 14 at 7–8. It also contends whatever allegations Sanyal makes as to Creech's "negligent use" of his taser are conclusory. *Id.* at 8.

A county cannot be sued "unless the state consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The TTCA provides several limited waivers of immunity, but not for "allegations against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee." *Goodman*, 571 F.3d at 394; *see e.g., City of Waco v. Williams*, 209 S.W.3d 216, 221 (Tex. App.—Waco 2006, pet. denied) ("[A] negligence claim under the TTCA cannot arise out of the intentional acts, including excessive force, of a law enforcement officer against a person.") (cited by *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017)); *Harris Cnty. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (intentional-tort exception applicable to plaintiff's claim that police officer negligently fired his pistol and arrested him during a traffic stop—acts that were clearly intentional).

The gravamen of Sanyal's claim is that Creech wrongfully and intentionally tased him during a traffic stop. Couching that claim in negligence terms does not obviate the intentional nature of Creech's conduct. The Supreme Court of Texas has expressly disapproved of similar attempts

to circumvent the intentional-tort exception of the TTCA. *See, e.g.*, *Delaney v. Univ. of Hous.*, 835 S.W.2d 56, 59–60 (Tex. 1992). Accordingly, Sanyal's TTCA claim is dismissed.

### 3. *Monell* Liability

Sanyal brings his final claim against the county under a municipal-liability theory. Dkt. 1 ¶¶ 78–120. He alleges the county violated his Fourth and Fourteenth Amendment rights by (1) failing to train and supervise its police force and (2) perpetuating officer misconduct by providing deputies with overly broad discretion and failing to adequately train and supervise them. *Id.*

The failure-to-train theory requires a plaintiff to show (1) "the [county] failed to train or supervise the officers involved;" (2) "a causal connection" between the alleged failure to train or supervise and constitutional violation; and (3) "the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). To prevail under this "stringent" standard, Sanyal must allege with specificity how a particular training program is defective, along with "[a] pattern of similar constitutional violations by untrained employees." *Id.* (citation omitted).

Sanyal fails to meet this "notoriously difficult" standard for failure to train. *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023). The complaint pleads a failure-to-train theory in a conclusory manner, failing to support the allegations with any specific facts. Dkt. 1 ¶¶ 82–104. Because Sanyal does not allege the minimum standards in this industry, detail the county's current training program, or explain how it is inadequate with specificity, his failure-to-train theory fails.

To state a claim for failure to maintain adequate policies under § 1983, the plaintiff must allege "three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Sanyal claims the county's failure to maintain adequate training standards and "continued legal education pertaining to these trainings" perpetuated inadequate policies "with respect to alternatives to excessive or deadly force" and "tasering." Dkt. 1 ¶ 91, 99.

Sanyal fails to allege the second element—an official policy or custom—by omitting from the complaint any specific "policy statement[s], ordinance[s], regulation[s], or decision[s] that [are] officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Webster v.*

*City of Hous.*, 735 F.2d 838, 853 (5th Cir. 1984). Although Sanyal claims Creech "has been involved in litigation in the past as it pertains to his conduct as an officer," he does not allege a "widespread practice of officials or employees . . . so common and well settled as to constitute a custom that fairly represents the municipality's policy." Dkt. 1 ¶ 85; *Cox v. City of Dall.*, 430 F.3d 734, 748 (5th Cir. 2005). Instead, Sanyal concedes Creech's behavior "[was] in noncompliance with the Sheriff's Office and County's policies and training." Dkt. 1 ¶ 96. This concession is contradictory and fatal to his claim that the county maintained a policy that was the "moving force" behind his alleged constitutional violations. Sanyal's *Monell* claim is dismissed.

\* \* \*

For the foregoing reasons, the court grants Creech's motion to dismiss in part and denies it in part, and grants GCSO and the county's motion to dismiss. Dkts. 11, 14. The sole surviving claim is the excessive-force claim against Officer Creech.

Signed in the city of El Paso this 9th day of June, 2025.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE